# Illinois Official Reports

## Appellate Court

---

### *CSC Partners Management, LLC v. ADM Investor Services, Inc.*, 2021 IL App (1st) 210136

---

| | |
|---|---|
| Appellate Court Caption | CSC PARTNERS MANAGEMENT, LLC, and CLARK STREET CAPITAL ADVISORS, LLC, Plaintiffs-Appellants, v. ADM INVESTOR SERVICES, INC.; JOSEPH FENNESSEY; FINALYZE CAPITAL, LLC; and ANGELOS MICHALOPOULOS, Defendants (ADM Investor Services, Inc.; Joseph Fennessey; and Finalyze Capital, LLC, Defendants-Appellees). |
| District & No. | First District, Sixth Division<br>No. 1-21-0136 |
| Filed | June 11, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 19-L-008068; the Hon. Thomas R. Mulroy, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Garrett L. Boehm Jr., Mark D. Belongia, and LeighAnn M. Thomas, of Johnson & Bell, Ltd., of Chicago, for appellants.<br><br>James L. Kopecky and Ashley Fawver, of Kopecky Schumacher Rosenburg LLC, of Chicago, for appellee ADM Investor Services, Inc.<br><br>Nemura G. Pencyla, of Ekl, Williams & Provenzale LLC, of Lisle, for other appellees. |

JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Mikva and Justice Oden Johnson concurred with the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, CSC Partners Management, LLC (CSC), and Clark Street Capital Advisors, LLC (Clark Street), filed an interlocutory appeal alleging that the circuit court erred in granting defendants' motion to compel arbitration and dismissing plaintiffs' claims without prejudice. On appeal, plaintiffs allege that (1) not all parties to the complaint agreed to arbitrate pursuant to the rules of the National Futures Association (NFA) and (2) they did not consent to arbitrate their claims against defendant ADM Investor Services, Inc. (ADMIS). Plaintiffs also contend that the trial court should have ordered a stay of the court proceedings instead of dismissing all claims without prejudice. For the following reasons, we reverse and remand for further proceedings.

¶ 2                                    I. JURISDICTION

¶ 3    On December 4, 2020, the trial court entered an order to compel arbitration of plaintiffs' claims. On December 18, 2020, plaintiffs filed a motion to reconsider that sought to vacate the court's December 4, 2020, order to compel arbitration, as well as reinstate the action. The trial court denied the motion on January 7, 2021. Plaintiffs filed their notice of appeal on February 8, 2021. For the reasons stated below, this court has jurisdiction pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017).

¶ 4                                    II. BACKGROUND

¶ 5    On May 22, 2018, Jonathan Winick, president of Clark Street, and Joseph Fennessey, a futures trader who traded through Finalyze Capital, LLC (Finalyze), organized CSC, a Delaware limited liability company. CSC was formed with an initial capital investment from Clark Street, which became one of two partners of CSC. Fennessey was the other partner. An Operating Agreement was executed in connection with CSC's formation, with Winick signing as president of Clark Street and Fennessey signing for himself.

¶ 6    Winick and Fennessey were at all relevant times associate members with the NFA. CSC was a member from January 2019 to May 15, 2020. Pursuant to the NFA Rulebook, section 2(b) of the "Member Arbitration Rules" provides, in pertinent part, that "disputes between Members and Associates and between Associates shall be arbitrated under these Rules, at the election of the person filing the claim ***. Once a claim is filed, arbitration is mandatory for the Member or Associate the claim is against." Nat'l Futures Ass'n Member Arbitration R. 2(b) (eff. Oct. 6, 2020), https://www.nfa.futures.org/rulebook/rules.aspx?Section= 6&RuleID=SECTION%202 [https://perma.cc/8JC7-9AM2].

¶ 7    On July 22, 2019, CSC and Clark Street (hereinafter "plaintiffs") filed a complaint against Fennessey, Finalyze, ADMIS, and Carlos Cabrera, alleging tortious interference with a prospective business relationship that belonged to CSC, breach of fiduciary duty, and breach of the operating agreement. On October 15, 2019, Fennessey filed a claim for arbitration with

the NFA against CSC and Winick. On February 15, 2020, plaintiffs filed an amended complaint that added a tortious interference count against Angelos Michalopoulos.

¶ 8     On March 13, 2020, ADMIS and Cabrera filed motions to dismiss plaintiffs' amended complaint. That same day, Fennessey and Finalyze filed their answer, affirmative defenses, and counterclaim for tortious interference. On April 3, 2020, plaintiffs filed a motion to dismiss the counterclaim. Plaintiffs also filed a motion before the NFA to dismiss the arbitration claim or, in the alternative, to stay the NFA action pending resolution of the court proceedings.

¶ 9     Fennessey subsequently filed an amended NFA claim, adding Finalyze as a claimant and adding Clark Street and CSC Quant Trading LP as respondents. The NFA, however, rejected the additional parties because they were not members or associates of the NFA. Fennessey then filed a second amended arbitration claim with the NFA naming only CSC and Winick as respondents. In the second amended claim, Fennessey acknowledged the NFA's rejection of Clark Street, but alleged that the NFA had jurisdiction over Winick and that Clark Street "is an entity wholly owned and controlled by" Winick. As such, "[a]ny entity record he controls, directly or through any intermediate entity he controls, would similarly be subject to discovery under NFA Arbitration Rules Section 7." Fennessey also claimed that given Winick's capacity as president of CSC and his duties as outlined in the operating agreement, "any actions taken by CSC Quant Trading LP and any records of same controlled by Respondent Jonathan Winick need to be accounted for in the NFA arbitration, and any records of such entity which he controls *** are subject to disclosure pursuant to NFA Arbitration Rules Section 7."

¶ 10    In the second-amended NFA claim, Fennessey alleged (1) breach of the operating agreements and the memorandum of understanding, resulting in substantial damages, (2) breach of the duty of good faith and fair dealing, (3) unfair and deceptive practices, and (4) tortious interference with his prospective economic advantage. The tortious interference claim referenced the involvement of defendants Cabrera, Michalopoulos, and ADMIS.

¶ 11    On September 4, 2020, Fennessey and Finalyze filed a motion in the trial court to compel arbitration or, in the alternative, to stay court proceedings. On December 1, 2020, the court heard oral argument on (1) ADMIS and Cabrera's motions to dismiss plaintiffs' amended complaint, (2) plaintiffs' motion to dismiss the counterclaim, (3) the motion to compel arbitration, and (4) plaintiffs' motion to supplement the record.

¶ 12    The court denied the motion to supplement the record and proceeded to hear argument on the motion to compel arbitration. Counsel for Fennessey and Finalyze argued that because the dispute involves the actions of Fennessey, Winick, and CSC, all members of the NFA, any dispute between them "needs to be arbitrated if one of them asks for arbitration," and Fennessey requested arbitration. Plaintiffs argued that the "claims against the defendants are intertwined with each other such that bifurcating and taking the Fennessey part and putting it in arbitration would be wholly unfair, prejudicial, and procedurally very difficult for the Court to handle, given the fact that these are so intertwined."

¶ 13    Plaintiffs also disputed that all of the claims were subject to arbitration. They argued that "[t]here was no ruling about our claims and whether our claims had to be brought in arbitration." Rather, the NFA considered "a single issue. The single issue was, can Fennessey proceed in the arbitration with his personal claims. Their answer was yes. That was the one and only thing that was brought before the arbitrator, and the only thing ruled on by the arbitrator."

¶ 14    ADMIS interjected that if the court decided not to dismiss ADMIS pursuant to its motion to dismiss, ADMIS "would go to arbitration, absolutely. You won't be in two forums. We'll go to arbitration."

¶ 15    The court stated, "my inclination is to send this to the arbitrator. Is there anything I can do to facilitate that, other than enter an order saying that it goes?" Plaintiffs' attorney requested that ADMIS's motion should be denied because "they've said they'll agree to arbitration, so if that's the case, then their motion should be denied and the case should be sent to arbitration for further handling." The court, however, stated that it would not rule on the motions to dismiss and would "[j]ust send the case to arbitration."

¶ 16    The court continued:

> "So my order is going to be the case is—I don't know whether I should stay it or dismiss it.
>
> I could dismiss it without prejudice, I suppose.
>
> Theoretically, you could come back here to confirm the award; I don't know.
>
> But I'm going to dismiss it. Let me dismiss it without prejudice, send you to arbitration.
>
> And [plaintiffs' attorney], if you want to dismiss a defendant, you can do that on your own. Or not. I think that's something the arbitrator has to worry about.
>
> And that's the order for today.
>
> Is there anything else you'd like me to annoy you with?
>
> [PLAINTIFFS' ATTORNEY]: Nope I think that covers it."

¶ 17    The court entered its written order on December 4, 2020. Therein, the court granted Fennessey's and Finalyze's motion to compel arbitration. The court further found that (1) defendant Cabrera was dismissed by agreement, (2) "Defendant ADMIS having orally consented to NFA jurisdiction, the case is referred to [NFA] Arbitration, Arbitration No. 2019 ARB 214," and (3) because the case was referred to arbitration, the court did not rule on ADMIS and Cabrera's motions to dismiss or on plaintiffs' motion to dismiss Fennessey's and Finalyze's counterclaim. The court dismissed the case "without prejudice."

On December 16, 2020, plaintiffs filed a motion to reconsider, alleging that resolution through arbitration would "be incomplete." Plaintiffs argued that defendant Michalopoulos was "not subject to NFA jurisdiction" and cannot be compelled to arbitrate. They also claimed that "it is unclear that the NFA would have jurisdiction over Finalyze." Plaintiffs contended that, despite these shortcomings, "the court has referred the entire case to arbitration before the NFA." They requested that the court vacate its order to arbitrate, reinstate plaintiffs' case, and stay the arbitration proceeding pending resolution of the court proceedings. On January 7, 2021, the court denied the motion without a hearing. The written order did not provide a basis for the court's ruling. On February 8, 2021, plaintiffs filed this appeal.

¶ 18                        III. ANALYSIS

¶ 19    As a preliminary matter, Fennessey and Finalyze raised the issue of this court's jurisdiction. "It is axiomatic that the appellate court must first consider its jurisdiction to hear an appeal before reaching the merits." *In re Estate of Gagliardo*, 391 Ill. App. 3d 343, 349 (2009).

- 4 -

¶ 20     Illinois Supreme Court Rule 307 governs interlocutory appeals as of right. When appealing from an interlocutory order, "the appeal must be perfected within 30 days from the entry of the interlocutory order by filing a notice of appeal designated 'Notice of Interlocutory Appeal' conforming substantially to the notice of appeal in other cases." Ill. S. Ct. R. 307(a) (eff. Nov. 1, 2017). Rule 307(a)(1) provides that "[a]n appeal may be taken to the Appellate Court from an interlocutory order of court: (1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017).

¶ 21     "An order of the circuit court to compel or stay arbitration is injunctive in nature and subject to interlocutory appeal under paragraph (a)(1) of the rule." *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11, (2001). The trial court's December 4, 2020, order to compel arbitration was thus appealable under Rule 307(a)(1). Instead of filing a notice of appeal, however, plaintiffs filed a motion to reconsider the December 4, 2020, judgment. Fennessey and Finalyze argue that the filing did not stay the time within which plaintiffs had to file their notice of appeal. They contend that plaintiffs' notice of appeal, filed more than 60 days after the court's December order, was untimely.

¶ 22     However,

> "Rule 307(a)(1) permits interlocutory appeals from four types of orders: (1) orders that deny (*i.e.*, refuse) injunctions; (2) orders that create (*i.e.*, grant) injunctions; (3) orders that change the effects of (*i.e.*, modify or dissolve) existing injunctions; and (4) orders that perpetuate the effects of (*i.e.*, refuse to modify or to dissolve) existing injunctions. [Citation.]" *Craine v. Bill Kay's Downers Grove Nissan*, 354 Ill. App. 3d 1023, 1025 (2005).

In this case, the court's December 4, 2020, order was an injunctive and appealable order because it granted Fennessey's and Finalyze's motion to compel arbitration. See *Kreiss*, 198 Ill. 2d at 11. Furthermore, the trial court's January 7, 2020, order denying plaintiffs' motion to reconsider the December order essentially refused to modify or dissolve an existing injunction. See *Fuqua v. SVOX AG*, 2014 IL App (1st) 131429, ¶ 15. Therefore, the court's January 7, 2021, order was also appealable under Rule 307(a)(1). See *id.* Thirty days from that date is February 6, 2021. Since February 6, 2021, fell on a Saturday, and February 7, 2021, was a Sunday, plaintiffs had until February 8, 2021, to file a notice of appeal, which they did. Accordingly, this court has jurisdiction to consider plaintiffs' appeal. See 5 ILCS 70/1.11 (West 2018) (providing that "[t]he time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sunday or is a holiday").

¶ 23     Plaintiffs contend that the trial court erred in granting the motion to compel arbitration. At a hearing to compel arbitration, the only issue before the trial court is whether there exists an agreement to arbitrate the dispute in question. *Board of Managers of the Courtyards at the Woodlands Condominium Ass'n v. IKO Chicago, Inc.*, 183 Ill. 2d 66, 70-71 (1998). "Whether a contract to arbitrate exists must be determined by the trial court, not an arbitrator." *Brookner v. General Motors Corp.*, 2019 IL App (3d) 170629, ¶ 17; see also *Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 23 (stating that court proceedings on a motion to compel arbitration "are governed in accordance with the Illinois rules of procedure, including the procedures set forth in section 2(a)" of the Uniform Arbitration Act (Act) (710 ILCS 5/2(a) (West 2018)).

¶ 24    When a party appeals from an interlocutory order granting a motion to compel arbitration, the sole issue before a reviewing court is whether there was a showing sufficient to sustain the trial court's order. *Cohen v. Blockbuster Entertainment, Inc.*, 338 Ill. App. 3d 171, 177 (2003). Where the opposing party denies the existence of an agreement to arbitrate, the Act "contemplates a substantive disposition of the issues presented to the court." *Id.*; 710 ILCS 5/2(a) (West 2018) (providing that if the opposing party denies the existence of an arbitration agreement, "the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied"). "Where a trial court has failed to articulate any specific reasons for ruling on the motion to compel arbitration, the court has not issued a substantive disposition." *Sturgill*, 2016 IL App (5th) 140380, ¶ 27.

¶ 25    In *Cohen*, the plaintiffs filed a class action suit alleging that defendant charged excessive fees for video rentals that were not returned on time or not returned at all. *Cohen*, 338 Ill. App. 3d at 172. Defendant filed two motions to dismiss and a pleading titled "Supplemental Motion to Dismiss or in the Alternative for a Partial Stay and to Compel Arbitration." *Id.* at 173-74. The supplemental motion argued "that the class members who signed the pertinent membership agreement must be compelled to arbitrate their individual claims pursuant to an arbitration clause contained therein." See *id.* at 174.

¶ 26    In its oral ruling, the trial court expressed two concerns regarding the arbitration clause: (1) the impact of the arbitration fee on the decision of a class member to arbitrate and (2) whether precluding members from pursuing class action suits would be unconscionable. *Id.* The court only expressed a " 'general concern with the arbitration provision' " and did not address the arbitration issue " 'because we're here on a motion to dismiss.' " *Id.* The trial court's written order, however, stated that " 'defendant's supplemental motion to dismiss, or in the alternative, for a partial stay and to compel arbitration are denied for the reasons stated in open court.' " *Id.*

¶ 27    On appeal, this court addressed the denial of the motion to compel. We found that the trial court failed to comply with section 2(a) of the Act "where the record reflects that it made no substantive rulings on the issues raised by plaintiffs below regarding the validity and enforceability of the arbitration agreement. There are several factual and legal issues that need to be resolved before a determination on arbitrability can be resolved." *Id.* at 178. Since the trial court did not make a substantive determination of the issues raised, we concluded that there was no showing sufficient to sustain the denial of the motion. *Id.* The proper remedy would be to reverse and remand for further proceedings consistent with section 2(a) of the Act. See *id.*; see also *Onni v. Apartment Investment & Management Co.*, 344 Ill. App. 3d 1099, 1105 (2003) (finding that the trial court's failure to substantiate its ruling on a motion to compel arbitration required reversal and remand).

¶ 28    In opposition to the motion to compel arbitration, plaintiffs here denied the existence of an agreement to arbitrate between all of the parties. They asserted that not all of the parties in the court proceedings are subject to NFA jurisdiction. Therefore, the trial court cannot compel parties who were not members or associate members of the NFA to arbitrate their claims.

¶ 29    In its order granting the motion to compel, the trial court referred the matter to case No. 2019 ARB 214, Fennessey's arbitration claim before the NFA. As such, we presume that the basis for the court's order to compel arbitration was the agreement to arbitrate pursuant to the NFA rules. The only parties involved in that claim, however, are Fennessey, CSC, and Winick,

all of whom were members or associate members during the relevant time period. Finalyze, one of the parties filing the motion to compel, was rejected by the NFA as a party to the arbitration claim. Therefore, although the trial court found an agreement to arbitrate, that finding did not resolve the issues raised by plaintiff concerning whether the arbitration agreement was enforceable as to non-NFA members. The court needed to resolve those factual and legal issues before determining whether the disputes were arbitrable.

¶ 30 The trial court, however, did not make any findings as to whether the non-NFA members were subject to the arbitration agreement. The court decided to "[j]ust send the case to arbitration," and it dismissed plaintiffs' complaint without prejudice. Section 2(a)'s directive does not allow the trial court to rule in such a conclusory manner when granting a motion to compel arbitration. *Onni*, 344 Ill. App. 3d at 1105. Rather, the Act requires the trial court to "separately address each issue raised by the motion, supporting its resolution of each with specific reasons, be they legal or findings of fact." *Id.* at 1104. Where the trial court failed to articulate reasons for its ruling on a motion to compel arbitration, there was no showing sufficient to sustain its decision. See *id.*; *Herns v. Symphony Jackson Square LLC*, 2021 IL App (1st) 201064, ¶ 31 (finding no sufficient showing to sustain the trial court's order where the court's denial of a motion to compel failed to make substantive rulings on the arbitrability issues raised by the parties).

¶ 31 Our supreme court's determination in *Courtyards* does not require a contrary result. In that case, the plaintiff filed a complaint against the developers of the condominium (the Zale defendants), seeking damages for alleged defects in the design and construction of the condominium's roofs. *Courtyards*, 183 Ill. 2d at 67. The Zale defendants subsequently filed a third-party complaint against the firm that provided architectural and design services for the buildings, Johnston Associates, Inc. (Johnston). *Id.* The contract between the Zale defendants and Johnston stated that " '[e]ither party may demand in writing arbitration of all claims, disputes or questions of this Contract or breach thereof in accordance with the prevailing rules of the American Arbitration Association.' " *Id.* at 69. Johnston filed a written demand for arbitration and, on the same day, filed in court a motion to compel arbitration and stay the third-party claims against it. *Id.*

¶ 32 The trial court denied Johnston's motion to compel, relying on the holding in *J.F. Inc. v. Vicik*, 99 Ill. App. 3d 815 (1981), that the policy favoring arbitration may give way to policies favoring the joinder of claims after balancing certain factors. *Courtyards*, 183 Ill. 2d at 69. It found that if arbitration were to proceed in the matter, the " 'problems would be enormous.' " *Id.* at 70. The appellate court affirmed the trial court's denial of the motion to compel arbitration.

¶ 33 The supreme court, however, noted that, at a hearing to compel arbitration, "the trial court should concern itself solely with whether an agreement exists to arbitrate the dispute in question." *Id.* at 70-71. Furthermore, the general rule in Illinois "is that agreements to arbitrate will be enforced despite the existence of claims by third parties or of pending multiparty litigation." *Id.* at 71. The court rejected *Vicik*'s balancing of factors to determine whether to compel arbitration in a multiparty litigation. *Id.* at 73-74.

¶ 34 Instead, since arbitration is "a creature of contract," the court chose to follow the well-settled rule that the parties have a right to freely contract. *Id.* at 74. As such, "once a contract containing a valid arbitration clause has been executed, the parties are irrevocably committed to arbitrate all disputes arising under the agreement." *Id.* The court reasoned that to deny

- 7 -

Johnston's request to arbitrate "would deny parties the right to their contractually chosen method of dispute resolution." *Id.* It held that once the trial court determines a valid arbitration agreement exists, it "must compel arbitration, even when the principal litigation involves parties that are not signatories to the arbitration agreement." *Id.*

¶ 35    Although plaintiffs' litigation involves multiple parties, *Courtyards* does not support granting the motion to compel here. The issue before the court in *Courtyards* was one of law: whether the trial court can compel arbitration when the litigation also involves parties not subject to the agreement to arbitrate. It found that "agreements to arbitrate must be enforced despite *** pending multiparty litigation." *Id.* at 78. In other words, if two parties in a multiparty litigation have an agreement to arbitrate, that contract must be honored between them, even if the other parties are not subject to arbitration. Whether there was a showing sufficient to sustain the trial court's ruling was not at issue in *Courtyards*.

¶ 36    Furthermore, the supreme court in *Courtyards* indicated that the trial court has a duty to make a substantive determination on each claim raised by the parties regarding the arbitrability of the dispute. The Zale defendants argued that because Johnston did not have arbitration agreements with two of the Zale defendants, Zale Groves and Zale Enterprises, their claims should not be arbitrated, and Johnston "should be compelled to participate in the trial proceedings." *Id.* Johnston disagreed, arguing that "when the complete contracts are disclosed all [Zale defendants] will have arbitration agreements." *Id.* The supreme court ruled that

> "[t]his issue is for the trial court to determine. If the court finds that a valid arbitration agreement exists between Johnston and Zale Groves and Johnston and Zale Enterprises, the trial court must compel arbitration. If a valid arbitration agreement does not exist, the third-party claims brought by Zale Groves and Zale Enterprises must be litigated in a judicial forum." *Id.*

This directive is in line with the holdings in *Cohen* and *Onni*, which found that the trial court must make a substantive determination of the arbitrability issues raised in a motion to compel. *Onni*, 344 Ill. App. 3d at 1104; *Cohen*, 338 Ill. App. 3d at 178.

¶ 37    For these reasons, we reverse and remand for the trial court to make factual and legal findings regarding whether an agreement to arbitrate exists between the parties in the litigation. If the trial court finds that Fennessey, CSC, and Winick have an agreement to arbitrate in case No. 2019 ARB 214 before the NFA, it must compel arbitration of their disputes for that reason. See *Courtyards*, 183 Ill. 2d at 74 (the trial court must compel arbitration when there is an arbitration agreement between the parties). The trial court must also address whether the remaining parties in the litigation have an agreement to arbitrate and make findings thereto. If it finds that a valid agreement exists between Fennessey/Finalyze and each of the other parties, then it must compel arbitration. See *id.* at 78. If a valid arbitration agreement does not exist, then those claims "must be litigated in a judicial forum." *Id.*

¶ 38    Due to our disposition of this appeal, we need not consider plaintiffs' argument that the trial court erred in dismissing their complaint without prejudice instead of staying the proceedings pending arbitration.

¶ 39                               IV. CONCLUSION

¶ 40        For the foregoing reasons, we reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

¶ 41        Reversed and remanded.